TOWN OF PLATTEVILLE VS. THE GALENA & SOUTHERN WISCONSIN RAILROAD COMPANY.

RAILROADS.    *Accepted proposition for municipal aid; obligation of company; diversion of road by pretended branch, enjoined.*

1. Where a town, at an election for that purpose, accepts a written proposition for aid made to it by a railroad company pursuant to ch. 182 of 1872, the terms and construction of the proposition cannot be modified by representations of the company made to the voters between the proposition and the election.
2. It is competent for a railroad company, in submitting to a municipality a proposition for aid, to define therein, as a part of the proposition, the line of the proposed road.
3. A company authorized to construct a railroad through this state from the Illinois line to intersect the M. & P. du C. R. R., west of Monroe, made a proposition to the plaintiff town, stating that it had surveyed and located a line of its road through certain sections in that town, to a point designated in the village of Platteville, and proposed to build that road " on the route indicated," from Galena to the Wisconsin river; and it asked aid of the town to build the road " on the route indicated." The town accepted the proposition, and issued its bonds. *Held*, that while the proposition does not disclose a survey and location of the line of the road northward *beyond the point designated*, yet it bound the company to build a continuous line of road from Galena, over the surveyed line

described in the proposition, to the point designated, and *from that point* to the Wisconsin river.

4. A feeble railroad company, of doubtful ability to construct any road between the terminal points of its charter, will be restrained, at the suit of a municipality which has subscribed for stock, and issued bonds, in aid of its proposed main line, from wasting its means in constructing branch roads so as to disable it to build such main line; and where a pretended branch is such that its completion will be a complete user of the company's original franchise, and will give it a continuous road between the termini originally named, but not passing through or near the plaintiff municipality as did the main line proposed, and there is no apparent design to continue the road on such main line, the construction of the pretended branch will be restrained as a "diversion" of the road from such municipality, within the meaning of sec. 23, ch. 119 of 1872.

5. The fact that, pending an appeal from an order against such a diversion, the road enjoined has been actually built, is no reason why the order should not be reversed.

APPEAL from the Circuit Court for *Grant* County.

Action for a perpetual injunction restraining the defendant from building its road from a point called Phillips' Corners, or any other point on its then existing road, over a line avoiding the plaintiff town, instead of extending it from said town toward the Wisconsin river.

On the 10th of September, 1872, defendant was engaged in attempting to build a railroad from Galena, Ill., to some point on the Wisconsin river at or near Muscoda, in Grant county, in this state, to intersect the Milwaukee & P. du C. Railway, and had then located its line so as to run past the village of Platteville, some three or four miles to the east of that village. On the day above named, it submitted to the voters of the plaintiff town, pursuant to the statute, a proposition in writing, in which it certified that it had surveyed a line of its road over and through certain sections of said town, and, if suitable arrangements could be made, "to the track of the D., P. & M. Railroad, to run cars to the grain warehouses," and that it proposed to build its said railroad "on the route indicated," from the city of Galena to the Wisconsin river, and asked that a

special election might be "called pursuant to law to determine as to the amount, terms and conditions on which [it would] submit the question of town aid to a vote of the people of said town to aid in the construction of said railroad." The proposition further stated that the company proposed "to build and operate said railroad to said town of Platteville, on the route indicated, within one year from the time of voting aid at a special election;" and that the town should subscribe to the capital stock of the company $32,000, payable in its bonds of a defined character, which, as well as the stock, were to be placed in escrow, the former to be delivered to the company when it should be made to appear to the satisfaction of the chairman of the town board and the president and trustees of the village of Platteville that said road would be "completed as aforesaid." This proposition was accepted by the voters of the plaintiff town at an election held on the 14th of October, 1872, and bonds of the town to the amount above named were deposited in escrow. Defendant having failed to complete the road to the point designated in the plaintiff town within a year, as agreed, the officers of the town, having authority for that purpose, extended the time for the completion of the road to that point; and it was afterwards completed, and the bonds delivered to defendant; and all interest which had accrued on them, with a large part of the principal, had been paid before the commencement of this action. The road has never been continued northward from the point to which it was thus built.

At a meeting of defendant's directors on the 20th of June, 1877, they resolved that the company "proceed to build, maintain and operate a railroad branching from its present road as now operated, at a point known as Phillips' Corners," for a distance of thirteen miles northward, through certain designated towns — the line so designated being nearly or quite the same as that on which its proposed road had been located prior to September 10, 1872. A few days after the passage of this resolution, defendant filed in the office of the secretary of state

of this state a certificate of its determination to build, operate and maintain a branch on the line described in the resolution (sec. 12, ch. 119, Laws of 1872); and shortly after it commenced building said "branch."

In addition to the above facts, which are not denied, the complaint alleges that between the making of said written proposition and the election, defendant's officers and servants repeatedly promised the voters of the plaintiff town that if plaintiff would vote the aid asked for, defendant would not build any road except that on the proposed line through Platteville, and would make that its main and only line, from Galena to the Wisconsin river; that the only object of plaintiff or its voters in voting such aid, as defendant well knew, was to prevent said road from being built on the proposed line east of Platteville, and to procure it to be built through that place; that after defendant had forfeited its right to the bonds by failing to complete the road to Platteville within the time agreed, in order to induce plaintiff's officers to extend the time for the completion of said road, and revive the contract, it renewed, by its officers and servants, its verbal pledges to such town officers, that the line through Platteville should be its through line from Galena to the Wisconsin river; and that the town officers extended the time and revived the contract in reliance upon these promises.   It further alleges that the proposed road, called by defendant a branch, runs to no town or village; that the terminus thereof named in the certificate filed with the secretary of state, is simply the farthest point to which it was possible for defendant to build its road with the money it had or hoped to get; that the proposal to build the same as a branch was merely an attempt to evade defendant's contract with plaintiff; that the original line from Platteville north was not built, nor proposed or intended to be built; that the pretended branch ran in the same direction with the main line, and to the same point; that defendant had no means to build both, and did not intend or desire to build its so-called

main line through Platteville; that it was insolvent, and had no means to build any road except what it could raise by selling, at a heavy discount, its bonds secured by mortgage upon the whole road, as well that part built by plaintiff's money as said proposed new road, in advance of its building; that no judgment at law could be collected against it; and that if it were allowed to go on and build the proposed road east of Platteville, plaintiff would suffer an irreparable injury.

Upon the verified complaint, and an undertaking in the usual form in the sum of $5,000, a temporary injunction was granted by a court commissioner. Defendant answered, denying the averments of the complaint described in the last paragraph, and alleging that it was building said branch road as it had a right to do under the laws of this state, in good faith, with intent to maintain and operate the same, because it was the opinion of its directors and a large majority of its stockholders that such branch is necessary for the remunerative running of its road, as a feeder to it, and is the only present safe and judicious investment of its money, and, if built and operated as contemplated, will double defendant's earnings. It further alleges that defendant's present chief engineer, after a careful examination of the ground and of the monuments, surveys and profiles made by its former engineer, informs defendant that the extension of its road from its terminus in the plaintiff town is impracticable without a large and unreasonable expenditure, much greater than the amount of business which such road could reasonably be expected to obtain in the country through which it would be compelled to run, and that favorable reports made by defendant's former engineer were founded upon errors of fact and judgment; that defendant believes this information to be true; that it never agreed to extend its road from its present stopping place in the plaintiff town; that the construction of the proposed branch will so increase defendant's business, that its property will be greatly enhanced in value, and its stock and

securities will be at par, and defendant will be able to command all the money it may require in "maintaining, operating and extending its road in all proper ways and manners;" that defendant's line of railroad now in operation, including stations, side-tracks, rolling stock, etc., is worth $500,000, "its bonded debt now owing does not exceed $300,000," and its floating debt does not exceed the sum of $15,000; and that the injunctional order has caused it great damage, and, if continued any considerable time, will cause it irreparable damage in many ways, and especially by rendering it unable to comply with its contracts relative to building and operating said branch road. The answer was verified by persons who had been or were defendant's principal officers.

Upon the pleadings, undertaking and injunctional order, the circuit judge at chambers, on defendant's motion, vacated such order; and from this order of the circuit judge, the plaintiff appealed.

*Wm. E. Carter*, for the appellant, contended, 1. That, by the written proposition submitted by defendant, especially when construed in the light of the circumstances then existing, it agreed, in consideration of $32,000 voted it by plaintiff, that, instead of building its road from Galena to Muscoda on the line previously located, it would build the only road it had power to build between those points, on a route through the plaintiff town and across the sections named in the proposition; that the proposition, when made and accepted, became a binding contract, from which defendant could not escape, especially after receiving and using the bonds thereupon issued by the plaintiff (2 Redfield on R. W., 321, note 6; *Chapman v. Railroad Cos.*, 6 Ohio St., 119; *Kenosha, etc., Railroad Co. v. Marsh*, 17 Wis., 13; *Næsen v. Port Washington*, 37 id., 168; *Perkins v. Port Washington*, id., 177); that what defendant could not do directly in changing the line of its road so that it should not run through Platteville, it could not do indirectly by an evasive pretense of building a branch; and

that the only defense really set up in the answer was, that defendant did not propose to build on the line indicated in its proposition because it thought it more to its interest to build on another line.   2. That any pledges, promises or representations of the defendant, its officers, agents or servants, to the voters of the plaintiff town, after the making of said proposition, to induce them to vote in favor of aid to defendant's road, and without which they would not have voted in favor of it, are as much a part of the contract as the written proposition itself.   3. That stockholders have a right to insist that their money shall not be diverted without their consent to the building of roads not embraced in the scheme to which they subscribed; that such a change of route and purpose as is shown here, will release nonassenting stock subscribers whose stock is not paid for (authorities above cited, and *Attorney Gen. v. West Wisconsin Railway Company*, 36 Wis., 466); and that plaintiff, having subscribed and paid for its stock for the purpose of securing a road over a particular route, has no remedy but by injunction to prevent the diversion of such road, and that is the proper remedy.   Tay Stats., 1462, §§ 3 et seq.; High on Inj., 387 et seq., 717; Story's Eq. Jur., § 870, note 3, §§ 901, 927; 2 Redf. on R. W., 307, 312, 318, 321; *Pettibone v. Railroad Co.*, 14 Wis., 443; *Davis v. Railroad Co.*, 12 id., 16; *Andrews v. F. L. & T. Co.*, 22 id., 288; *Williams v. Smith*, id., 594; *Phillips v. Albany*, 28 id., 353; *Bohlman v. R. R. Co.*, 30 id., 105; *Potter v. Menasha*, id., 492; *Lawson v. Schnellen*, 33 id., 288; *Diedrichs v. Railway Co.*, id., 219; *Att'y Gen. v. Railroad Cos.*, 35 id., 425, 468, 503, 523–540; *Att'y Gen. v. W. W. Railroad Co., supra.*

For the respondent, a brief was filed by *A. W. Bell*, and the cause was argued orally by *Mr. Bell* and *P. L. Spooner*. They contended, 1. That the injunction in this case suspended the defendant's general and ordinary business, and could not be granted, under the statute, "except by a court or judge thereof," nor "without due notice of the application to the

proper officers of the corporation" (R. S., ch. 129, sec. 7; Laws of 1872, ch. 119, sec. 55; Laws of 1874, ch. 292, sec. 2; *Doty v. Menasha*, 14 Wis., 75; *Burlander v. Railway Co.*, 26 id., 76; *Moore v. Railroad Co.*, 34 id., 173); and that, even without such a statute, injunctions of this character will not be allowed *ex parte*. *D. & R. Canal, etc., v. Railroad Co.*, 1 McCarter, 445; *Society, etc., v. Butler*, 1 Beasley, 498. 2. That plaintiff was not entitled to an injunction upon the complaint. Upon this point counsel contended, (1) That the only contract between the parties was that expressed in defendant's written proposition. (2) That the only condition upon which plaintiff was to grant aid, expressed in the proposition, was the completion of the road to the village of Platteville. (3) That nothing in the complaint shows that defendant ever agreed *not* to build any other road. Upon the most liberal construction of the proposition or of the complaint, they merely indicate the route of the *main* line of defendant's road to the Wisconsin river, without any agreement that defendant will not build *branches* from such road whenever its interests may require. (4) That if there had been any such condition or limitation in plaintiff's stock subscription as is claimed, it would have been void as against public policy. *Fuller v. Dame*, 18 Pick., 472; *State v. R. R. Co.*, 29 Conn., 538; *Marsh v. R. R. Co.*, 64 Ill., 414; *St. J. & D. C. R. R. Co. v. Ryan*, 11 Kans., 602; *Pacific R. R. Co. v. Seeley*, 45 Mo., 212. (5) That plaintiff's only rights are those of a stockholder (High on Ex. Rem., 221, note 3; *Curtis v. Whipple*, 24 Wis., 350; *Whiting v. Railroad Co.*, 25 id., 182, 187; *Baltimore & Ohio R. R. Co. v. Wheeling*, 13 Grattan, 40); that such acts of directors as come within the powers conferred on them by the charter, or by amendments thereto made pursuant to a reserved power of amendment, or by general laws, will not exonerate stock subscribers (2 Story's Eq. Jur., § 1558; 1 Redfield on R. W., 35, and note, 209, and cases there cited, 211–214; *Faulkner v. Hebard*, 26 Vt., 452); that although

a stockholder may enjoin the corporation from employing its property or powers for a purpose wholly or materially different from that designed by the act of incorporation, " he has no right to enjoin it from doing what is in direct furtherance of the object of its creation, and is for the benefit of all the stockholders *as such*, though it may be injurious to such stockholders *in another character*" *(B. & O. R. R. Co. v. Wheeling, supra; Bonaparte v. C. & A. R. R. Co.*, 1 Baldw., 205); and that under the laws of this state, existing when plaintiff's subscription was made, defendant was empowered, on taking certain prescribed steps, to construct branch roads, and this act entered into and controls all contracts made under it. Laws of 1872, ch. 119, secs. 12 and 55, and ch. 182; *Moore v. R. R. Co.*, 34 Wis., 193; 1 Redfield on R. W., 35 (*32), note, and 407 (*388). (6) That the "diversion" of a railroad from a municipality subscribing aid, in the sense of sec. 23, ch. 119 of 1872, means the taking up of the track and relocating it elsewhere. (7) That if plaintiff wishes to compel defendant to extend its road from Platteville to the Wisconsin river, its remedy is not by injunction, but by *mandamus.* 1 Redfield on R. W., 675; High on Ex. Rem., 221, note 3; *Att'y Gen. v. Railroad Cos.*, 3 MacN. & G., 453; *S. C.*, 7 Eng. L. & E., 283; *Heathcote v. R. R. Co.*, 6 R. & C. Cas., 358; *People v. Railroad Co.*, 37 Barb., 216. (8) That no facts are stated in the complaint from which it can be legally inferred, either that defendant is not proceeding in good faith, in the exercise of its legal powers, in building the proposed branch road, or that plaintiff will be injured irreparably, or greatly, or at all, by such branch; and therefore no ground is laid for an injunction, which may seriously embarrass the company and injure the public interests, before plaintiffs' right has been determined at law. 2 Story's Eq. Jur., § 924 a, note 1, and § 1559; High on Inj., §§ 35, 388–417; 1 Redfield on R. W., 41, note 3; 2 id., 346, note (e); 1 Pin., 667; 11 Wis., 253; *Dickerman v. Bowman*, 14 id., 393; *Campbell v. Morrison*, 7 Paige, 157;

*Battle v. Stephens,* 32 Ga., 25; *Branch v. Supervisors,* 13 Cal., 190. 3. That the answer fully met and denied every material allegation of the complaint which could be relied on to sustain an injunction, and, so far as responsive to the complaint, must be taken as true (High on Inj., §§ 883, 886–7, 896); and upon such an answer an injunction is always dissolved, in the absence of special circumstances strongly appealing to the discretion of the court. High on Inj., § 905; 9 Wis., 361, 712; 17 id., 30; 18 id., 471; *Dinehart v. La Fayette,* 19 id., 677; *Smith v. Appleton,* id., 468; *Milwaukee v. O'Sullivan,* 25 id., 671; *Tainter v. Lucas,* 29 id., 375.

Ryan, C. J. The voters of the appellant town may have been influenced by representations of the respondent railroad company or its officers, made intermediately between the proposition and the election; but the vote of the town was to accept the formal proposition of the railroad company, just as it is written. And no representations, outside of the written proposition, can modify its terms or aid its construction.

The proposition itself is loosely framed; but it is not difficult to put a construction upon it. The respondent was authorized to construct a railroad through this state from the county of Jo Daviess, Illinois, to intersect the Milwaukee & Prairie du Chien Railroad, west of Monroe. In the construction of this road it desired the corporate aid of the appellant. To that end, it made a proposition stating that it had surveyed and located a line of its road through certain sections in the town to a point designated in the village of Platteville, and proposed to build that road on the route indicated from Galena to the Wisconsin river; and invoked the aid of the town to build that road on the route indicated.

So far as this proposition discloses, the actual survey and location of the line of road does not appear to have then gone northward beyond the point designated. But the proposition was to build the road on that line to the Wisconsin river. It

therefore bound the respondent, not only to build the proposed road on that line and to that point, but to build its road on that route from Galena to the Wisconsin river: that is, a continuous line of road from Galena to the Wisconsin river, over the surveyed line described in the proposition to the point designated, and from the point designated to the Wisconsin river. That is "the route indicated" of the proposition. That is the road which the proposition undertook to build, and which the appellant was asked to aid. Such is not only the plain construction of the proposition, but is the only construction consistent with its good faith. Any other construction attempted to be given to it, is a fraud upon the plain and honest meaning of the language used.

But it is said that so much of the respondent's proposition as defines its line of road was *ultra vires*, against public policy, and void. *Ultra vires*, it is said, because sec. 4, ch. 182 of 1872, under which the proposition was made, prescribes all the terms and conditions which the proposition can contain, and does not include a statement of the line of road, or an agreement to run it to or through the municipality whose aid is sought. Against public policy, it is said, because such a limitation of the line of road is in restraint of the exercise of the discretionary franchise granted, to locate it for the public good. If this were so, it might be a question how far the respondent could be heard to set up its own excess of authority in aid of its own breach of contract. But the position cannot be held well taken. The various statutes on the subject, taken together, clearly establish a public policy to encourage municipalities to aid the construction of railroads, " which will promote the general prosperity and welfare of the tax-payers of such municipalities." Ch. 182 of 1872. The acceptance of a proposition under sec. 4 is made conclusive evidence of that benefit to the tax-payers. It therefore enters into the proposition, which ought to disclose the benefit and bind the railroad company to whatever produces the benefit. And sec.

4, accordingly, prescribing certain necessary, formal state-
ments, has in it no restrictive words, nothing tending to ex-
clude other statements showing the benefit which the munici-
pality would reap by the construction of the road. If this
were otherwise, if propositions of railroad companies could
not bind them so to build their roads as to benefit the munici-
palities whose aid they seek, such propositions would proba-
bly be not often successful. And the statutes plainly estab-
lish a public policy that railroad companies may exercise dis-
cretion in the location of their roads in this very way, and be
bound by the exercise when made.

It appears that the respondent has built its road to the point
indicated, in the village of Platteville, but not that it has lo-
cated any part of its line from thence to the Wisconsin river.
It appears that before the road was built to the village of
Platteville, the respondent had proposed to build a more di-
rect line some miles to the eastward; and that, in leaving this
line to reach the village, the road made a violent detour of
some miles from a point called Phillips' Corners. It appears
that, after the road had been built to the village of Platteville,
the respondent obtained a patent under the general railroad
act, ch. 119 of 1872, to build a road branching from Phillips'
Corners and running substantially on the line formerly pro-
posed, some thirteen miles, in a line towards the Milwaukee
and Prairie du Chien road and the Wisconsin river, shorter
and more direct than the line through the village of Platte-
ville.

The respondent claims that this is a branch road under sec.
12 of the general railroad act. It is difficult to believe that
this claim is made in good faith. The statute authorizes a
railroad company to extend its road from any point named
in its charter, or to build branch roads from any point in
its line of road. This provision implies a main line of
road, certainly located, probably constructed. It could hard-
ly receive a construction authorizing any railroad company

substantially to abandon its chartered line and wander through the state by extensions and branches from any fraction constructed of its chartered line. A branch road implies a main line located at least, if not actually built and operated. There cannot be a branch without a trunk. The respondent's original franchise is to locate and construct a road from the state line to the Milwaukee and Prairie du Chien road. This trunk line does not appear to be located throughout, much less built. The alleged branch looks suspiciously like a continuance of the main line, on the route formerly proposed; and the spur running thence to the village of Platteville suspiciously like a mere branch of that main line.

If the respondent should continue what it calls a branch to the Milwaukee and Prairie du Chien road, as it might do, it would certainly be within its original franchise, to build a road from the state line to the Prairie du Chien road. That would be a complete user of its original franchise. It needed no additional franchise to construct it. If it were not otherwise bound by its contract with the appellant, it might then have abandoned its line and dismantled its road from Phillips' Corners to the village of Platteville. And all the facts in the case, as well as the argument of the respondent's counsel, have satisfied us that the respondent intends the pretended branch to be its main line; its pretended main line to the village of Platteville to be a branch only.

. There is no evidence of any present design to continue the road northward from the village of Platteville; indeed the respondent's answer denies its obligation to do so, and it sufficiently appears that there is no such design. And it was argued here for the respondent, that its contract with the appellant does not bind it to do so; that the road already constructed satisfies the contract; that the appellant has in effect paid its money for a branch of the main line running to the village of Platteville, not for a main line running through it; and that the appellant has no cause to complain of the expendi-

ture of the aid which it gave, upon a line of road outside of it, and in which it has comparatively little interest. This court can sanction no such punic faith.

But if the line of road which the appellant seeks to enjoin could be regarded in the light of a branch from the main line, the equity of the appellant, in the existing condition of things, would not be materially different. The respondent is admitted to be, as all the facts go to show, a feeble company; with doubtful ability to construct any road between the terminal points of its charter. Equity will not suffer such a company, as against such a contract for its main line, to waste its means upon branches which may be more profitable, but which it has no right to undertake by disabling its capacity to build the main line.

In any view, this case is within the letter and spirit of sec. 23 of the general railroad act, which prohibits any railroad company from diverting its road from a municipality from which it has received aid. If the respondent's road be not diverted or turned aside from the village and town of Platteville, it is difficult to understand how a road can be turned aside from a given point.

The course of the respondent was willful wrong and gross fraud towards the appellant, and the injunction restraining it should have been continued. But it is said, and indeed conceded, that the road enjoined has been actually built since the dissolution of the injunction. It is therefore urged that the injunction will be ineffectual. It is none the less the duty of this court to reverse the order dissolving it. And it will be thereupon the duty of the court below to exercise its authority, as far as it can, towards repairing the wrong which its error has permitted. "The consequence may possibly be to stop the railway. I answer that it ought to be stopped, for it passes where it does by wrong." SHADWELL, V. C., in *Att'y Gen'l v. G. N. Railway Co.*, 4 De Gex & Sma., 75. The construction of the road pending the appeal was a bold and

dangerous risk in disregard of judicial authority. The railroad company is the creature of the law, and must be taught, if need be, that the law is stronger than its creature; and that the construction of a road in violation of the law and its duty does not place it beyond the power of the courts to enforce its good faith and obedience to the law in the performance of its contracts.

*By the Court.* — The order dissolving the injunction is reversed, and the cause remanded to the court below for further proceedings according to law.