# KALBFELL et al. v. WOOD et al.

### In Banc, February 26, 1906.

1. **PROHIBITION.** The writ of prohibition is granted only to prevent usurpation of judicial power.

2. ——: **Election Officers: Primary.** The election commissioners of St. Louis do not exercise judicial powers in selecting judges, clerks and challengers for a primary election from lists submitted to them by a managing committee of the party holding the same. The board of election commissioners is an administrative body, with specific statutory powers and duties.

3. ——: ——: ——: **Rival Committees.** The court will not, by prohibition, undertake to determine which of two factions is the committee of a political party, or direct the election from a list of party members proposed by one faction and ignore those proposed by the other.

4. ——: ——: **Coupled With Court.** Where prohibition is entertained to prevent the election commissioners from opening ballot boxes, the jurisdiction of the court is obtained by the fact that a court is joined as defendant.

5. ——: **Moot Cases: Elections.** Courts do not sit for the purpose of determining abstract and speculative questions of law, or laying down rules for the future conduct of individuals in their business, but are confined in their judicial action to real controversies wherein the legal rights of parties are necessarily involved and can be conclusively determined. Where the provisional writ against election commissioners, directing them to show cause why they should not recognize certain named persons as the committee of a party, and select the judges and clerks for a primary election from lists furnished by them, was made returnable after the primary was held, there is nothing upon which the judgment could operate even if the court should determine whether or not those persons constituted the true committee.

### Prohibition.

PROCEEDING DISMISSED.

*John A. Gilliam* and *Thomas T. Fauntleroy* for plaintiffs; *Nathan Frank* of counsel.

(1) The list of judges, clerks and challengers having been filed August 30, 1902, it became an accomplished fact, and no alleged removal on September 1, 1902, of part of the members of the committee could invalidate the action of August 30th.   Burton v. Patton, 47 N. C. 124; People v. Collins, 7 Johns 549; Cotton v. U. S., 29 Ct. Cl. 207; Allen v. Blunt, 3 Story 742; Gear v. Grosvenor, 6 Fish Pat. Cas. 514; In re Ah Lee, 6 Sawyer 410; State v. Forrest, 13 Wash. 268; State v. Jacobs, 17 Ohio 143; Com. of Trenton v. McDaniel, 52 N. C. 107; Swindell v. Warder, 52 N. C. 575; Attorney-General v. Parsell, 99 Mich. 381; Perkins v. Perkins, 24 N. J. L. 409; Venable v. Curd, 39 Tenn. 582; Morton v. Lee, 28 Kan. 286; State v. Carroll, 38 Conn. 449; Ex parte Snyder, 64 Mo. 58; Powers v. Braley, 41 Mo. App. 562.   (2)   The assumption by the election commissioners of a claim of power to act between the Kalbfell committee and the Blake committee, and the clear legal right of the Kalbfell committee gave plaintiffs the right to a writ of prohibition.   Young v. Beckham, 72 S. W. 1092; Brown v. Republican County Executive Committee, 68 S. W. 622; State ex rel. v. Slover, 126 Mo. 652; State ex rel. v. Ross, 122 Mo. 477; State ex rel. v. Withrow, 133 Mo. 523; State ex inf. v. Talty, 166 Mo. 529.

*Chas. W. Bates* and *Wm. F. Woerner* for defendants.

(1)   The law (the Primary Election Law of 1901) required the primary election to be held September 16, 1902, as called by the Republican party, and it was then held.   This was a month before the court convened so that no case was presented wherein any relief could be granted even if plaintiff were entitled to any.   The case was and is a mere moot case and presents mere abstract questions.   Under such circumstances courts refuse to

entertain jurisdiction or proceed to judgment. State ex rel. Rodman, 43 Mo. 260; State ex rel. v. Finley, 74 Mo. App. 216; State ex rel. v. Police Commissioners, 80 Mo. App. 25; State ex rel. v. Westport, 135 Mo. 133; State ex rel. v. Stewart, 115 Mo. 244; Mills v. Green, 159 U. S. 654; Thomas v. Musical, etc., Union (N. Y.), 8 L. R. A. 178. (2) The members of the Blake committee are necessary parties to this proceeding, and no relief can be granted plaintiffs which injuriously affects the rights claimed by said members unless they are parties. No judgment rendered in a case in which they are not parties would be binding on them. If the rights of plaintiffs are sufficient upon which to maintain this action, surely the rights of the members of the Blake faction or committee are sufficient to require notice to them and opportunity to be heard before their rights are forever taken away, and before they are prevented from performing their official duties to their party. (3) Whether the Blake committee was the Republican City Central Committee of the city of St. Louis is a political question, conclusively determined by the Republican party. The court has no jurisdiction to review the action of that party. State ex rel. v. Lesueur, 103 Mo. 253; State ex rel. v. Crittenden, 164 Mo. 237; Davis v. Hambrick (Ky.), 51 L. R. A. 671; Phelps v. Piper (Neb.), 33 L. R. A. 55; McKane v. Adams, 123 N. Y. 609; Matter of Fairchild, 151 N. Y. 359; Kearns v. Hawley (Penn.), 42 L. R. A. 235; Moody v. Trimble (Ky.), 50 L. R. A. 810; Stephenson v. Board of Election Commissioners (Mich.), 42 L. R. A. 214; White v. Sanderson (Minn.),42 L. R. A. 231; Phillips v. Gallaher (Minn.), 42 L. R. A. 222. So far as we have been able to ascertain, our own courts have always accepted as conclusive on them and on the election officials the action of the political parties when taken in accordance with party usages, customs and practices. (4) Where the law vests in officials or tribunals, whether executive, legislative or judicial, a discretion, or requires them to

exercise judgment, the courts have no jurisdiction to exercise that judgment for them or to control their judgment within the sphere of action marked out for them by the law. The conduct of elections is an executive or administrative function, and the courts cannot undertake it. Supervisors of Elec., 114 Mass. 247; State ex rel. v. Lesueur, 103 Mo. 253; State ex rel. v. Crittenden, 164 Mo. 237. (5) Judicial power is vested by the Constitution of Missouri in courts and not in judges sitting in chambers in vacation. Const., art 6, sec. 1. A judge cannot finally adjudicate the merits of a case. In re Cleveland, 51 N. J. L. 311. So much of Judge ROBINSON's order as required the board of election commissioners to select names of judges, clerks and challengers for the Republican primary election to he held September 16, 1902, from the list of names filed by the Kalbfell committee and prohibited it from selecting the same from the list filed by the Blake committee was a final adjudication of the case, particularly as the court did not convene and could not adjudge the matter until a month after the primary election was required by law to be held. Weaver v. Toney (Ky.), 51 L. R. A. 106. The extent of the power of a judge is to stay action and to preserve the *status quo* until the court can pass on the matter, and a judge's order can have no further effect except to serve as process to bring parties into court. State ex rel. v. Rombauer, 104 Mo. 629. In the case at bar the order did not stay the action of the board of election commissioners in the matter of holding the Republican primary election of September 16, 1902, until the court could pass upon the matter, but commanded the board to proceed therewith, and in so doing directed what its judgment should be upon the facts and how it should act in finally completing the matter a month before the case could by any possibility get before the court. (6) Prohibition is not the proper remedy for correcting erroneous decision or for instructing inferior courts or tribunals or officials. Rail-

road v. Smith, 154 Mo. 316. Prohibition will not lie unless the inferior court tribunal or official to whom it is directed has no jurisdiction to pass upon the matter before it, or unless it has gone beyond its jurisdiction in the determination it makes. State ex rel. v. Withrow, 141 Mo. 80; State ex rel. v. Withrow, 108 Mo. 8; Railroad v. Wear, 135 Mo. 230. Prohibition lies only where judicial functions are to be performed. State ex rel. v. Clark, 41 Mo. 49; State ex rel. v. Elkin, 130 Mo. 90. In prohibition the court will confine itself to questions of jurisdiction and cannot go into the merits. State ex rel. v. Henderson, 164 Mo. 360; State ex rel. v. Moehlenkamp, 133 Mo. 137; Wand v. Ryan, 166 Mo. 649. Election commissioners act within their jurisdiction in determining which of two committees is the controlling one when they proceed to select judges, clerks and challengers for primary elections. Such commissioners merely in this case find as a fact which committee the Republican party establishes or creates. State ex rel. v. Lesueur, 103 Mo. 262; State ex rel. v. Higgins, 76 Mo. App. 327; State ex rel. v. Crittenden, 164 Mo. 237.

*John A. Gilliam* and *Thomas T. Fauntleroy* for plaintiffs in reply; *Nathan Frank* of counsel.

Prohibition is available to check an illegal use of power by boards, etc., exercising quasi-judicial functions. State ex rel. v. Elkin, 130 Mo. 90; State v. Young, 29 Minn. 523; Brown v. Board (W. Va.), 32 S. E. 168; Day v. Board, 102 Mass. 310; People v. Amsterdam, 90 Hun 495; School Dist. v. Burris, 84 Mo. App. 654.

PER CURIAM—On the 9th day of September, 1902, the plaintiffs, asserting themselves to be members of the Republican City Central Committee of the city of St. Louis, presented their petition to one of the judges of this court in vacation, for a writ of prohibition, to be directed to the members of the board of election

commissioners of the city of St. Louis. The petition in substance stated that the plaintiffs were, on the 30th of August, 1902, and for two years prior thereto, together with other persons named in the petition, duly and legally constituted Republican City Central Committee of the city of St. Louis, which said committee is composed of twenty-eight members, one member from each ward of said city; that the city of St. Louis is a municipal corporation of over 300,000 inhabitants, and was such municipal corporation at all the time therein mentioned, and primary elections of political parties therein are governed by the act of the General Assembly of March 13, 1901, known as the ''Primary Election Law.'' The petition then alleged that there was in the city of St. Louis a political party known as the ''Republican party,'' and that said political party had more than forty per cent of the qualified voters of said State, who are qualified to vote at elections held therein. It was then alleged that under the rules and customs of the Republican party, the Republican City Central Committee had existed for many years as the governing body of said political party in said city to call and conduct primary elections in said city, and no other organization had any authority to call or conduct such primary elections in said city for such party. That Louis P. Aloe, James McCaffery and John M. Wood, constituted the board of election commissioners for said city, duly appointed and qualified under the provisions of said act of March 13, 1901. It is then alleged that on the 13th of August, 1902, the said Republican City Central Committee, at a meeting of its members, legally called and held, ordered a primary election of the Republican party of St. Louis under the provisions of such primary law, to nominate by direct vote, candidates for the various offices to be voted for at the general election to be held on November 4, 1902, and filed said call with the said board of election commissioners, on August 16, 1902. It was then alleged that

the said Republican City Central Committee, composed of the members named in said petition, filed with said board on the 30th of August, 1902, a list of the names of legal and qualified voters members of the Republican party, from which the said election commissioners should select judges, clerks and challengers of elections for said primary election as authorized by the said act of the General Assembly approved March 13, 1901; that after said call had been made for said primary election, and the list of names from which to select judges, clerks and challengers, had been filed with the board of election commissioners, William H. Rudolph and thirteen other members of said Republican City Central Committee, together with William H. Blake, William H. Hahn and six others named therein, conspired to thwart the will and desire of said Republican party in said city, and declared themselves members of the said city central committee, and on September 2, 1902, filed with said board of election commissioners another list of names, from which they demanded that the said board of election commissioners should select judges, clerks and challengers of election for said primary election to be held on the 16th of September, 1902; that said board of election commissioners claimed that it had jurisdiction to determine as to which of said bodies, that of which plaintiffs composed the majority or that of William H. Rudolph and the other associates with him composed a majority of the Republican City Central Committee, and from which of said lists it would select judges, clerks and challengers, and that unless prevented by a writ of prohibition, the said board of election commissioners would appoint from the list of names of judges, clerks and challengers submitted by William H. Rudolph and his associates, on or about September 2, 1902, judges, clerks and challengers to serve and act at the primary election to be held on said 16th day of September, 1902; that plaintiffs were remediless in the premises by or

through ordinary processes or proceedings by law to prevent the said board of election commissioners from exceeding their jurisdiction in claiming the power and authority to pass upon the lists filed for judges, clerks and challengers, and that in assuming to adjudicate between the plaintiffs and said Rudolph and his associates, as to which of said bodies constituted the Republican City Central Committee, the said election commisioners were encroaching upon the jurisdiction of the circuit court of the city of St. Louis and the Supreme Court of Missouri, and, therefore, the plaintiffs prayed a writ of prohibition directed against said election commissioners to prohibit them from assuming jurisdiction to determine whether plaintiffs or said Rudolph and his associates were members of the Republican City Central Committee, and to prohibit them from appointing any judges, clerks or challengers for the primary election to be held by the Republican party in the city of St. Louis from the lists filed by said Rudolph and his associates and to prevent and prohibit them from appointing said judges and clerks from any lists save that filed by the plaintiffs on August 30, 1902.

Upon the presentation of this petition to Honorable Waltour M. Robinson, one of the judges of this court, on the 9th day of September, 1902, a rule to show cause was granted by the said judge, directed to the said election commissioners to appear before him at chambers in Jefferson City, Missouri, on September 12, 1902, why the provisional writ of prohibition should not issue against them returnable to the Supreme Court of the State of Missouri, in Banc, on the 14th day of October, 1902, and show cause why a final judgment in prohibition should not be entered prohibiting said election commissioners from in any manner recognizing said Rudolph and his associates as members of the Republican City Central Committee of St. Louis, and prohibiting them from appointing said judges, clerks and challengers from any lists of names save that filed by

the plaintiffs with them on August 30, 1902. The provisional order was served on the election commissioners on September 9, 1902.

To that order the election commissioners on the 12th of September, 1902, made a return in which, after alleging the filing of the two lists by the plaintiff and his associates on the one hand and Rudolph and his associates on the other hand, the said board of election commissioners stated that up to that time there had been no occasion for the said board to select the names of judges, clerks and challengers for said primary election, and that said board had not yet undertaken to determine what names they would select for judges, clerks and challengers for said primary election; that said board had not sufficient knowledge or information, up to that time, upon which to form a judgment as to whether the plaintiffs and their associates or the said Rudolph and his associates constituted the governing and controlling committee of the Republican party of the city of St. Louis, and that said matters were questions of facts to be determined by said board when it should undertake to select judges, clerks and challengers in said primary election; that in due time said election commissioners would take up said matter and make due inquiry, and would honestly and faithfully decide said questions upon the evidence before them, and respectfully suggested that neither the Supreme Court nor any judge thereof had jurisdiction to issue the writ of prohibition prayed for by the plaintiffs and thereupon on the said 12th day of September, 1902, Honorable Waltour M. Robinson, one of the judges of the Supreme Court of Missouri, in vacation made an order over his hand and official signature, wherein he commanded the said election commissioners of the city of St. Louis to appear before the Supreme Court of Missouri, in Banc, on Tuesday, the 14th day of October, 1902, to show cause why a final judgment in prohibition should not be entered prohibiting the said

board of election commissioners and each of them from recognizing in any manner said Rudolph and his associates as members of the Republican City Central Committee of the city of St. Louis, and from recognizing the lists of judges, clerks and challengers submitted by said Rudolph and his associates on September 2, 1902, and from appointing any judges, clerks and challengers for the said primary election to be held on the 16th day of September, 1902, by the Republican party in the city of St. Louis, from the list filed by said Rudolph and his associates, and from appointing said judges, clerks and challengers from any list except that filed by the plaintiffs on August 30, 1902, and the said election commissioners were further commanded ''to refrain from any act or recognition of the body claiming to be the Republican City Central Committee of St. Louis of which said William H. Rudolph and his associates composed the majority, until further order of this court.''

Afterwards on the 14th day of October, 1902, two of the said election commissioners, Messrs. Wood and McCaffery, filed in this court their return to the preliminary rule issued as aforesaid by Judge Robinson, in which after admitting they were, together with Louis P. Aloe, the board of election commissioners for the city of St. Louis and that St. Louis was a city of over 300,000 inhabitants, and that there was a Republican party in said city duly organized and having a city central committee and duly authorized under the laws of this State to hold a primary election for the nomination of candidates, under the primary election law approved March 13, 1901, and that a call for a primary election of the Republican party of the city of St. Louis to be held on the 16th of September, had been issued, alleged that as said board of election commissioners, they prepared a notice of said primary election to be held on September 16, 1902, and, as required by law, fixed September 12, 1902, as the last day upon which delegates could be filed in their office for said primary election,

and September 15, 1902, as the last day upon which the personnel of any delegate could be changed. They admit that the plaintiff and his associates claiming to be the managing and controlling committee of said Republican party of the city of St. Louis, filed a list of names with said board of election commissioners, from which said board was requested to select judges, clerks and challengers for said primary election; that afterwards dissensions having arisen in the said Republican City Central Committee, the attention of the Republican State Central Committee was called to the said dissensions and said State Central Committee took cognizance of said charges and after notice to the plaintiffs and each of them, on September 1, 1902, removed plaintiffs from their respective positions as members of the Republican City Central Committee, and directed the vacancies to be filled by the remaining members of said Republican City Central Committee; that said committe did organize and elected William H. Blake as chairman and William H. Hahn as secretary, and the said Republican City Central Committee thus recognized rescinded the resolution asking the appointment from the lists of judges and clerks furnished by the plaintiff and his associates of judges and clerks for said primary election and on the 2nd of September, 1902, filed another list of names from which said board was requested to select judges, clerks and challengers for said primary election, and that said election commissioners felt that it was their duty, and they were bound by the action of the Republican State Central Committee, to recognize the said Rudolph and his associates as the governing and controlling committee of the Republican party of St. Louis, and thereupon proceeded to select judges, clerks and challengers from the list filed by said Rudolph and his associates, and that the said election commissioners were bound by the action of the said Republican State Central Committee upon this question, which was a political and not a judicial one,

and it was respectfully submitted to this court that it had no jurisdiction if the Republican State Central Committee had determined which of said rival committees claiming to be the controlling committee is such committee, to review said action.

To this return of the election commissioners, a reply was filed by the plaintiffs, in which they challenge the right of the State Central Committee to hear the charges against the plaintiffs and remove them from the City Central Committee of the Republican party of St. Louis.

At the request of the parties a special commissioner was appointed on the 24th day of December, 1902, by this court to take and hear the testimony and report the same to this court. Afterwards, in January, 1903, the said commissioner filed a transcript of the evidence taken before him, and in February, 1903, the defendants Wood and McCaffery filed their exceptions to the report of the commissioner.

Thereafter at the request of counsel and by permission of this court, the respective counsel for the plaintiffs and defendants herein filed their briefs in this cause; that of the plaintiffs in reply being filed October 26, 1903, and the cause was argued and submitted October 27, 1903, more than a year after said primary election had been held, and the general election of 1902 had passed into history.

I. From the foregoing statement it is apparent now and was when this cause was argued and submitted that any judgment this court could render could not possibly afford the plaintiffs any relief because the primary election had been held more than a year before the issues were made up in this court, and the cause submitted.

At that time and ever since, our dockets have been crowded with causes in which personal and property rights were involved and which could be and have been affected by our judgments, and hence we have permit-

ted these more important and living questions to occupy our time. It is deemed proper, however, to dispose of this matter and remove it from the docket.

The writ of prohibition under our laws is granted only to prevent usurpation of *judicial power*.

This court in State ex rel. v. County Court, 41 Mo. 44, held that the writ would not lie to a county court to correct its action when performing a mere administrative function in contradiction to the exercise of its judicial power, and it was held that in the removal of the public buildings of a county the county court acts in an administrative capacity as agent of the county, and prohibition was not the remedy.

In Casey v. Thompson, 42 Mo. 133, it was ruled that a writ of prohibition did not lie to restrain the State Auditor from issuing a distress warrant and the sheriff from executing the same because the duties of the State Auditor were executive and ministerial and not judicial in their nature, although it was earnestly argued that when the Auditor makes a settlement between the State and a collector of the revenue, he exercises judicial functions and in effect pronounces a judgment in striking the balance, upon which he could issue his distress warrant.   [Hockaday v. Newsom, 48 Mo. 196.]

Has the General Assembly of this State by the ''Primary Election Law'' of 1901 conferred judicial powers upon the board of election commissioners of the city of St. Louis, within the meaning of the law as to the function of a writ of prohibition, by the provisions in section 15 of said act: ''The judges, clerks and challengers who serve at said primary shall be selected by the election commissioners from lists submitted by the managing committee of the party holding the same?''

We think it is clear by all the analogies of the law and by the weight of decided cases, that such board of election commissioners is an administrative body with specific statutory powers and duties which in no man-

ner trench upon that judicial power which is by the Constitution of this State vested in the courts.

In Thomson v. Tracy, 60 N. Y. 1. c: 37, the claim was made that because the defendants were enjoined by a writ of prohibition from acting as executor and executrix in a proceeding against the Surrogate Court and the defendants, they had no right to appeal. The Court of Appeals very aptly defined the scope of a writ of prohibition, and concluded by saying: "A writ of prohibition is to prevent the exercise of a tribunal possessing *judicial powers* of jurisdiction over matters not within its cognizance, or exceeding its jurisdiction in matters of which it has cognizance. *It will not lie to restrain a ministerial act.* [Ex parte Braudlacht, 2 Hill 367; People v. Supervisors, 1 Hill 195.]"

In People v. Election Commissioners, 54 Cal. 404, the question here raised was squarely presented and as firmly decided, that a board of election commissioners was not a *judicial body,* and their action not *judicial* and was not subject to examination or review by the Supreme Court by a writ of prohibition.

See, also, Spring Valley Water Works v. City of San Francisco, 52 Cal. 111; Maurer v. Mitchell, 53 Cal. 291; State ex rel. Kellogg v. Gary, 33 Wis. 93.

In this last-cited case, an alternative writ of prohibition was quashed after return made, and issue of fact joined, it appearing it was improvidently granted.

The practice has obtained in this court of uniting the election commissioners with the judge of the court in prohibition cases to prevent the opening of the ballot boxes, but it is clear that the jurisdiction in those cases depends upon the proceeding against the court.

A most instructive case is that of Home Ins. Co. v. Flint, 13 Minn. 244. In the course of the opinion the court said: "The compliance with this law is the act threatened and sought to be restrained. If the word is used in the ordinary and legal acceptance, clearly there is nothing *judicial* in the making of the examination

and certificate required. The word 'judicial' is defined; (1) Pertaining to courts of justice; as, judicial powers. (2) Practiced in the distribution of justice, as judicial proceedings. (3) Proceeding from a court of justice; as, a judicial determination. . . . . A judicial investigation proceeds after notice, and eventuates in a judgment, which is the final determination of the rights of the parties, unless reversed by an appellate tribunal. The necessity of notice in the inception, and the conclusive character of the determination, are perhaps as good a test as any other, as to what proceedings are judicial. In this case it cannot be pretended that notice is required, or that the determination, or certificate, would be conclusive in collateral proceedings.''

In our opinion, the facts stated in the petition did not authorize the issuance of the provisional order in prohibition and the order was improvidently granted for the reason that the board of election commissioners were in no sense a judicial body and the action sought to be restrained was not a judicial action, and it should now, as was done in State ex rel. Kellogg v. Gary, be quashed. Whether Judge ROBINSON might have reviewed the action of the election commissioners by mandamus, as provided by section 23 of the act of March 13, 1901, we are not called upon to decide, but we are clear that prohibition did not lie.

II. But there is another ground upon which we think this cause should be dismissed, and it is this: Courts do not sit for the purpose of determining speculative and abstract questions of law, or laying down rules for the future conduct of individuals in their business, but are confined in their judicial action to real controversies wherein the legal rights of parties are necessarily involved and can be conclusively determined. [Thomas v. Musical Mutual Protective Union, 8 L. R. A. 178; Bigelow v. Hartford Bridge Co., 14 Conn. 565.]

193 Sup—44

In Mills v. Green, 159 U. S. 651, a motion was made in the Supreme Court of the United States to dismiss the appeal on the ground ''that there is now no actual controversy involving real and substantial rights between the parties to the record, and no subject-matter upon which the judgment of this court can operate,'' and it was sustained upon that ground without considering any other question appearing on the record or discussed by counsel. In that case the whole object of the bill was to secure a right to vote at the election to be held, as the bill alleged, on the third of August, 1895, of delegates to the constitutional convention of South Carolina. Before the appeal was taken that date had passed, and before entry of the appeal in the Supreme Court, the convention had assembled pursuant to the statute by which the convention had been called. The court held that it would take judicial notice of the election of the delegates and the assembling of the convention, as public matters of history, without formal proof. Said the court: ''The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot effect the matter in issue in the case before it. It necessarily follows, that when, pending an appeal from the judgment of a lower court, and without any fault of the defendant, an event occurs which renders it impossible for this court, if it should decide the case in favor of the plaintiff, to grant him any effectual relief whatever, the court will not proceed to a formal judgment, but will dismiss the appeal. And such a fact, when not appearing on the record, may be proved by extrinsic evidence. [Lord v. Veazie, 8 How. 251; California v. Railroad, 149 U. S. 308.]''

Applying the foregoing principles to the facts of this case, it is and has been apparent since the argu-

ment of this cause, that the primary for which plaintiffs claimed the right to name the judges, clerks and challengers, had been held a month before the provisional order in prohibition was returnable to this court. No judgment of this court, if it had jurisdiction by prohibition to so direct, could have availed to have the judges, clerks and challengers named by plaintiffs. inducted into office in time to have held such primary. When this court met on the 14th of October, 1902, the day on which said provisional order was returnable, the primary had been held and the candidates nominated thereat had been certified for their appearance on the ballots. Under the law of this State, there was not sufficient time to order a new primary and cause the names of the candidates to be certified in time for the November election in 1902. And it is plain no judgment this court could have rendered after the cause was docketed herein, could have given plaintiffs the only relief they asked, to-wit, an injunction against the election commissioners preventing them from recognizing the Blake-Rudolph Committee for the purposes of said primary, which had been held a month before this court convened, nor was it feasible to undo what had been done. It is true that, if a defendant, after notice of the filing of a petition for injunction to restrain the building of a house or of a railroad or any other structure, persists in completing the building, the court in which the injunction is pending is not deprived of the authority, whenever in its opinion justice requires it, to deal with the rights of the parties as they stood at the commencement of the suit and compel the defendant to undo what he wrongfully did since that time or answer in damages. [Tucker v. Howard, 128 Mass. 361; Att'y-Gen'l v. Railroad, 4 De G. & Sm. 75; Terhune v. Railroad (9 Stew.), 36 N. J. Eq. 318; Platteville v. Railroad, 43 Wis. 493.]

But obviously this is not that character of case. Here no order or judgment of this court, even if it had

jurisdiction in the case, could compel the defendants to undo what had been done and this must have been apparent when the provisional rule was made returnable long after the said primary was to be held, and the nature of the proceeding is such that a judgment for damages cannot be awarded. It is apparent that the provisional rule was improvidently granted, and that there is nothing before us but a moot question, and that no opinion or judgment we might render could be of any benefit to the plaintiffs, and accordingly the proceeding is dismissed.

All concur, except LAMM, J., who was not a member of the court when the cause was heard.